**200    BURDEN OF PROOF: ORDINARY**

Certain questions in the verdict ask that you answer the questions "yes" or "no". The party who wants you to answer the questions "yes" has the burden of proof as to those questions. This burden is to satisfy you by the greater weight of the credible evidence, to a reasonable certainty, that "yes" should be your answer to the verdict questions.

The greater weight of the credible evidence means that the evidence in favor of a "yes" answer has more convincing power than the evidence opposed to it. Credible evidence means evidence you believe in light of reason and common sense.

"Reasonable certainty" means that you are persuaded based upon a rational consideration of the evidence. Absolute certainty is not required, but a guess is not enough to meet the burden of proof.

**COMMENT**

This instruction was approved in 1972 and revised in 1989, 1991, 2000, and 2002. The instruction was reviewed without change in 2003. The comment was updated in 1982, 1985, 1986, 1988, 1989, 1991, 2000, 2001, and 2002.

In 2002, the Committee reviewed the standard civil burden of proof instructions following the decision of the supreme court in Nommensen v. American Continental Insurance Co., 2001 WI 112, 246 Wis.2d 132, 629 N.W.2d 301. The Committee is mindful of a number of suggestions made by the supreme court in Nommensen. From that case, we glean the following:

(1) The two element approach (the greater weight standard and the reasonable certainty standard) should not be abandoned. ¶4.

(2) The term, "the greater weight of the credible evidence," is understandable by the average juror. ¶16.

(3) The term, "reasonable certainty" has been firmly established in our case law. ¶26.

©2004, Regents, Univ. of Wis.

(4) Substituting "reasonable probability" for "reasonable certainty" would be inconsistent with precedent and is not the solution here. ¶56.

(5) A jury should first consider the greater weight standard, then apply the reasonable certainty standard. ¶27.

(6) The revision should separate the two elements. ¶57.

Our revision in 2002 endeavors to satisfy the guidelines set out in <u>Nommensen</u>.

<u>Nommensen</u> was a medical malpractice action. When the plaintiff filed proposed jury instructions, he asked the trial judge to replace the word "certainty" with the word "probability" in Wis JI-Civil 200, Burden of Proof: Ordinary. The trial judge declined to do so and charged the jury with Wis JI-Civil 200 without modification.

On appeal, the plaintiff, who had failed to establish causation, argued that the trial judge erroneously instructed the jury when it gave the standard jury instruction although he concluded the instruction correctly sets out current Wisconsin authority. The court of appeals affirmed the use of the instruction without modification, but said it was bound by precedent. A concurring opinion criticized the current instruction and urged the supreme court to reevaluate the use of the phrase "reasonable certainty."

The supreme court affirmed the trial judge's use of Wis JI-Civil 200. Its opinion contains the following passages:

- We think the Wisconsin Civil Jury Instructions Committee was standing on solid ground when it commented that "The Committee believes the term 'reasonable certainty' has been firmly established in our case law and accurately reflects the degree of certitude jurors must reach in answering verdict questions." Wis JI-Civil 200 cmt . . .

- We disagree with the criticism that "reasonable certainty" is not firmly established in our case law, or that it is not well supported by the cases that adopted it. Reasonable certainty is one of the two essential elements of the ordinary burden of proof in this state . . .

- Another of Nommensen's proposals—to eliminate discussion of the degree of certitude altogetherBruns contrary to well-established case law . . . This idea of Nommensen's does not square with this state's long-standing two-element approach to the burden of proof. The Wisconsin Civil Jury Instructions Committee also has expressly rejected this proposal. Accordingly, we decline to rewrite instruction 200 in the manner proposed by Nommensen . . .

- We have carefully considered petitioner's argument that there is potential for juror confusion in Wis JI-Civil 200, with respect to the elements of degree of certitude and quantum of evidence. With this in mind, we respectfully request the Wisconsin Civil Jury Instructions Committee to revisit the instruction for a thorough review . . .

©2004, Regents, Univ. of Wis.

- Changing "reasonable certainty" to "reasonable probability" in the instruction is not the proper tonic for potential juror confusion and would be inconsistent with precedent. However, we concur with Nommensen that instruction 200 as written is deserving of a thorough review. Such a review should consider all legitimate reformulations of the current instruction, so long as the instruction maintains the two-element approach to the burden of proof . . .

- In examining instruction 200, the committee should make every effort to remedy one of the most troubling aspects of the instruction: the juxtaposition of the two elements of the burden of proof . . .

**General Verdict**. If a general verdict is used, the first paragraph should read:

> The verdict form requires you to state whether you find for the plaintiff or the defendant. The burden, called the burden of proof, is on the plaintiff to satisfy you by the greater weight of the credible evidence, to a reasonable certainty, that you should find for the plaintiff. If you are not so satisfied, you must find for the defendant.

**Guessing and Speculation**. This instruction was revised in 1989 to incorporate concepts relating to speculation and guessing that were previously contained in Wis JI-Civil 220. As a result of this revision, the Committee believes a separate general instruction on speculation is not necessary and, therefore, Wis JI-Civil 220 was withdrawn.

**Case Law**. Wisconsin law recognizes and requires differing degrees of persuasion for different types of cases. Thus, separate and distinct burdens exist for: (1) criminal cases (beyond a reasonable doubt); (2) civil cases with penal aspects or involving criminal type behavior (higher civil standard: to a reasonable certainty by evidence that is clear, satisfactory, and convincing); and (3) ordinary civil actions (ordinary civil standard to a reasonable certainty by the greater weight of the credible evidence).

Each of these three burdens of proof has a mental element. This mental component is identical for the two civil standards (i.e., "satisfaction to a reasonable certainty"). Criminal cases call for a higher mental element: "beyond a reasonable doubt." In addition to the mental component, the two civil standards include a requirement as to the kind of evidence needed to carry a burden, i.e., "clear, satisfactory, and convincing evidence" for the middle civil burden and "greater weight of the credible evidence" for the ordinary civil burden.

Chief Justice Hallows in 1972 discussed the two components of the civil burdens in writing for the court in State ex rel. Brajdic v. Seber, 53 Wis.2d 446, 448, 193 N.W.2d 43 (1972):

©2004, Regents, Univ. of Wis.

> Every standard of burden of proof, other than the standard applied to criminal cases, is composed of two elements: (1) The degree of certitude required of the trier of the fact, i.e., reasonable certainty, and (2) either the quantity of the evidence, i.e., the greater weight or convincing power, or the quality of the evidence, i.e., clear, satisfactory, and convincing.

Along these same lines, the court, in Kuehn v. Kuehn, 11 Wis.2d 15, 104 N.W.2d 138 (1960), said the "complete rule of the burden of proof contains both the element of reasonable certainty and some degree of preponderance of the evidence."

Some have suggested, pointing to decisions predating 1920, that the dual component civil burdens can be abbreviated by simply dropping the mental element. See Sullivan v. Minneapolis, St. Paul & S.S.M.R. Co., 167 Wis. 518, 167 N.W. 311 (1918). The Committee disagrees with such proposals and follows the rationale expressed by the Wisconsin Supreme Court in Kuehn v. Kuehn, supra, in which Chief Justice Hallows said:

> The statement of the complete rule of the burden of proof contains both the element of reasonable certainty and some degree of preponderance of the evidence. It is possible the contestant having the burden of proof may have the preponderance of the evidence fair, clear, or otherwise in his favor and still fall short of convincing the jury to a reasonable certainty of the existence of the facts for which he is contending. 11 Wis.2d at 28

Based on the Committee's review of the case law, the Committee concluded in 1989 that this instruction, as well as the instruction on the middle burden (JI-Civil 205), correctly instruct juries on the burdens of proof in civil actions.

Suggestions have also been made to the Committee and to trial judges during instruction conferences that the certainty element ("to a reasonable certainty") should be replaced with the term "reasonable probability." Apparently, this suggestion is prompted by the fact that most expert witnesses, at least in medical malpractice cases, are asked to give opinions "to a reasonable probability." In Victorson v. Milwaukee & Suburban Transport. Corp., 70 Wis.2d 336, 356-57 234 N.W.2d 332 (1975), the trial judge used the word "probability" in place of "certainty" in Wis JI-Civil 200. The remainder of the instruction defining "greater weight" and "credible evidence" was given. The court said using the term "reasonable probability" was error, although not reversible error. The court also said the "use of probability rather than certainty was not to be encouraged."

The Committee feels that "greater weight" is an exact synonym for "fair preponderance" and much more understandable by the average juror. This expression of the ordinary burden was cited approvingly by the supreme court in Wangen v. Ford Motor Co., 97 Wis.2d 260, 299, 294 N.W.2d 437 (1980).

**Adverse Possession**. This instruction should be used in adverse possession cases. Kruse v. Horlamus Indus., 130 Wis.2d 357, 387 N.W.2d 64 (1986). Perpignani v. Vonasek, 139 Wis.2d 695, 735, 408 N.W.2d 1 (1987). In Kruse, the court expressly rejected the argument that the middle burden of proof applies to the jury's determination of whether adverse possession has occurred. In some older adverse possession cases, the term "clear and positive" evidence appears regarding evidence of possession. In Kruse, the title holder of the property argued that this term, "clear and positive," means that the middle burden of proof applies to the jury's determination. The court disagreed, concluding that the term is not to be used for the overall burden of proof.

©2004, Regents, Univ. of Wis.

**200**                                      **WIS JI-CIVIL**                                      **200**

Instead, this term refers only to the quality of evidence which may even be considered. To avoid confusion in future cases, the court expressly instructed trial judges to delete this term from their instructions to juries on adverse possession.

   **Comparative Negligence**. For the burden of proof in connection with the comparison of negligence question, see Wis JI-Civil 1580, Comparative Negligence: Basis of Comparison.

   **Presumptions**. Special attention is needed when instructing the jury on the burden of proof in cases involving statutory or common law presumptions. See Wis JI-Civil 1600, for an example of a situation where the burden rests upon the party contending the answer to a special verdict question should be "no."

   **Damages.** See Wis JI-Civil 202 and 1700 for the burden of proof on damages.

©2004, Regents, Univ. of Wis.

## 1007   CONTRIBUTORY NEGLIGENCE: DEFINED

Every person in all situations has a duty to exercise ordinary care for his or her own safety. This does not mean that a person is required at all hazards to avoid injury; a person must, however, exercise ordinary care to take precautions to avoid injury to himself or herself.

<div align="center">ADDITIONAL OR OPTIONAL PARAGRAPHS</div>

(A person must exercise ordinary care to employ (his) (her) senses of sight and hearing so as to become aware of the existence of danger to (him) (her). A failure to do so is negligence.)

(It is the duty of every person to exercise ordinary care to recognize and appreciate all dangers that are open and obvious to (him) (her) or which should have been recognized and appreciated by a reasonably prudent person under the same or similar circumstances. That the warning of the existence of danger was not seen or was not heard does not free one from negligence. In addition, one who looks and fails to see, or listens and fails to hear, a warning of danger which under like or similar circumstances would have been seen or heard by a reasonably prudent person is as negligent as one who did not look or listen at all.)

(However, a person is not bound to see every hazard or danger in his or her pathway even though they should be plainly observable nor to remember the existence of every condition of which the person has had knowledge. A person is only required to act as a reasonably prudent person would act under the same or similar circumstances.)

(To be free of negligence, a person must exercise ordinary care in choosing his or her course of conduct and in the pursuit of that choice. A person is not negligent in making a choice of conduct if the person has no knowledge that one course of conduct carries a greater

©2015, Regents, Univ. of Wis.

**1007**                     **WIS JI-CIVIL**                     **1007**

hazard than another, provided that the lack of knowledge is not the result of the person's failure to exercise ordinary care.)

(Insert Wis JI-Civil 1015, Negligence in an Emergency, if applicable.)


**COMMENT**

This instruction and comment were approved in 1974. The Committee revised this instruction in 2014 to replace the term, "guilty of negligence. " The comment was updated in 1989, 2000, 2003, 2004, and 2012.

A party has a right to an instruction relating to the contributory negligence of an opponent, even though an instruction on negligence generally (Wis JI-Civil 1005) is given. Raszeja v. Brozek Heating & Sheet Metal Corp., 25 Wis.2d 337, 343, 130 N.W.2d 855 (1964).

Note that some of the above optional paragraphs are framed in general terms while others are pointed at particular fact situations. Some other contributory negligence issues are dealt with specifically elsewhere in Wisconsin Jury Instructions-Civil (e.g., Wis JI-Civil 1046, Contributory Negligence of Passenger: Placing Self in Position of Danger; and Wis JI-Civil 1047, Contributory Negligence of Guest: Riding with Host; Wis JI-Civil 1047.1, Contributory Negligence of Guest: Active; Wis JI-Civil 1048, Contributory Negligence: Highway Defect; Wis JI-Civil 1049, Contributory Negligence: Sidewalk Defect; Wis JI-Civil 1902, Safe Place Statute: Negligence of Plaintiff Frequenter).

**Passive and Active Negligence**. In Johnson v. Cintas Corp. No. 2., Appeal No. 2013AP2323 (Recommended for publication), the court of appeals said that asking the jury to separately consider the plaintiff's "passive" and "active" negligence "could have been more confusing than helpful."

**Recreational Participants.** In April 1988, the Wisconsin Legislature enacted legislation which affects the civil liability of owners of recreational property. 1987 Wisconsin Act 377. The act imposes standards of conduct on persons who participate in indoor and outdoor recreational activities with respect to the legal responsibility for injuries that are incurred while engaging in these activities. According to the act, "recreational activity" means any activity undertaken for the purpose of exercise, relaxation, or pleasure, including practice or instruction in any activity. The act includes a long list of activities included within the definition of "recreational activity." The act codifies an "appreciation of risk" doctrine which arguably already exists in common law as contributory negligence. Under the act, a participant in a recreational activity must:

1. act within the limits of his or her ability;
2. heed all warnings
3. maintain control of his or her person and the equipment, devices, or animals used while participating in the activity; and

©2015, Regents, Univ. of Wis.

4.  refrain from acting in a manner that may cause or contribute to injury to himself or herself or other persons while participating in the recreational activity.

A violation of these responsibilities constitutes negligence and is subject to the comparative negligence statute.

**Participants in Snow Sports**. For the duties of ski area operators and participants in snow sports, see Wis. Stat. § 895.525 (2011 Wisconsin Act 199). The law sets forth the responsibilities of ski area operators and participants, but also establishes restrictions on civil liability.

**Mentally Disabled Persons.** For the contributory negligence of a mentally disabled person under care and custody, see Wis JI-Civil 1021 and Hofflander v. St. Catherine's Hospital, 2003 WI 77, 262 Wis.2d 539, 664 N.W.2d 545. In Hofflander, the supreme court recognized the concept of "subjective" contributory negligence. The Civil Jury Instructions Committee will be reviewing the Hofflander decision in 2004 to develop an instruction consistent with the decision.

**Medical Informed Consent.** See Wis JI-Civil 1023.4 for a comment on the issue of contributory negligence by a plaintiff in a duty to inform a patient case.

©2015, Regents, Univ. of Wis.

**1500**                                **WIS JI-CIVIL**                                **1500**


## 1500  CAUSE


In answering question(s)_____, you must decide whether someone's negligence caused the (accident) (injury). (This) (These) question(s) (does) (do) not ask about "**the** cause" but rather "**a** cause" because an (accident) (injury) may have more than one cause. Someone's negligence caused the (accident) (injury) if it was a substantial factor in producing the (accident) (injury). An (accident) (injury) may be caused by one person's negligence or by the combined negligence of two or more people.


**COMMENT**

This instruction was originally approved in 1989. It was revised in 1999, 2005, and 2021.

This instruction is based on Pfeifer v. Standard Gateway Theater, Inc., 262 Wis. 229, 236-38, 55 N.W.2d 29 (1952), and Osborne v. Montgomery, 203 Wis. 223, 242, 234 N.W. 372 (1931). It was approved in Ayala v. Farmers Mut. Auto Ins. Co., 272 Wis. 629, 639-40, 76 N.W.2d 563 (1956).

In Wisconsin, the test for whether negligence was causal is whether that negligence was a "substantial factor" in causing the injuries. Merco Distributing Corp. v. Commercial Police Alarm Co., Inc., 84 Wis.2d 455, 267 N.W.2d 652 (1978); see also Steinberg v. Jensen, 204 Wis.2d 115, 553 N.W.2d 820 (Ct. App. 1996). It is erroneous to instruct a jury that they must find that the negligence was "the" substantial factor in causing injury. Reserve Supply Co. v. Viner, 9 Wis.2d 530, 101 N.W.2d 663 (1960). In Steinberg v. Jensen, supra, the jury sent a note to the trial court asking: "With the cause question, do we all or only 10 to 2 majority, have to agree on the specific cause. It is sufficient for each of us to have some cause attributed to Dr. Jensen?" The trial judge gave the following supplemental instruction: "Specifically to your question the answer to that is no, not all have to agree but rather a 10 to 2 majority must agree and you must agree on a specific cause in that regard but the numbers are 10 to 2." On appeal, the court of appeals said that although the supplemental causation instruction did not use the term "the substantial factor in causing injury," the instruction implied that the jurors must agree that the negligence was "the cause," rather than "a cause." The use of the term "specific cause" informed the jury that they must agree on a particular, single, exclusive cause in order to answer "yes" to the causation question. The court said that instructing the jury in this manner resulted in a misstatement of the law regarding causation.

**Intervening Cause**. Where an intervening (superseding) cause allegedly produced by another is interposed as a defense by a defendant charged with the first act of negligence, the jury is first required to find whether the found negligence of such first actor was a substantial factor in causing the accident on which liability is sought to be predicated. See Pfeifer, supra. If the jury finds the negligence of the first actor is a substantial factor, then the defense of intervening cause is unavailing unless the court determines that there are policy factors which should relieve the first actor for liability. Ryan v. Cameron, 270 Wis.

**1500**                                **WIS JI-CIVIL**                                **1500**

325, 331, 71 N.W.2d 408 (1955); Restatement, Second, <u>Torts</u> § 447 (1934); Campbell, "Law of Negligence in Wisconsin," 1955 <u>Wis. L. Rev.</u> 1, 40.

**Public Policy Factors**. In 2004, the Wisconsin Supreme Court reviewed the history behind the application of the six public policy factors used to preclude tort liability and the relationship between "public policy" and "proximate cause." <u>Mackenzie Fandrey v. American Family Mut. Ins. Co.</u>, 2004 WI 62, 272 Wis.2d 46, 680 N.W.2d 345. The court said that when "public policy" is used in the context of precluding liability, that term is being used as a *synonym* for "proximate cause." The supreme court noted that the term "proximate cause" referred to two distinct concepts. The first use of the term was to describe "limitations on liability and on the extent of liability based on lack of causal connection in fact." The second use of "proximate cause" was to describe limitations on liability and on the extent of liability based on public policy factors making it unfair to hold a party liable for tort damages.

The court said that the first use on meaning of "proximate cause" has long been abandoned in Wisconsin in favor of the "substantial factor" test used to establish cause-in-fact, which is a jury issue. The court then noted that the second use and meaning of "proximate cause" still remains a part of Wisconsin's legal cause analysis. After reviewing a series of decisions addressing terms such as "cause-in-fact," "legal cause," "proximate cause," and "public policy factors," the court wrote in a footnote:

> "Fn 7. This discussion is not intended as an invitation to reintroduce the term 'proximate cause' into Wisconsin's legal lexicon or to alter the current state of Wisconsin's tort jurisprudence. Rather, this discussion represents an accurate historical analysis of Wisconsin's use of the term 'proximate cause' in relation to public policy factors. We are simply recognizing that what has previously been labeled as 'proximate cause,' <u>i.e.</u> the second step in the legal cause analysis, is now referred to as 'public policy factors.' This concept has not changed; only the label has done so. We emphasize that this opinion does nothing to change Wisconsin's common law relating to duty, breach, and cause in negligence claims. Once it is established that a plaintiff's negligence was a substantial factor in producing an injury, the only limitation on liability is public policy factors--what was previously referred to as 'proximate cause.' We use the terms 'proximate cause' and 'public policy factors' interchangeably only because, historically, Wisconsin courts have used these terms interchangeably."

In a concurring opinion, Justice Bradley addressed the above quoted footnote as follows:

> ¶45. The majority, at times, uses the terms "proximate cause" and "public policy" interchangeably. This may leave the reader wondering about the continued vitality of using proximate cause to limit liability. Footnote 7, however, provides the answer. Simply put, in Wisconsin we use public policy factors, not proximate cause, to limit liability.

**Cause of Collision v. Cause of Injury**. In submitting the cause question relating to a nondriver plaintiff (following a contributory negligence question), the inquiry is usually whether the negligence is a cause of plaintiff's injuries (or damage) rather than whether it is a cause of the collision. In matters where causation is disputed as to both the accident and the injury, it is error not to instruct the jury on a cause of the accident <u>and</u> a cause of the injury. Failure to do so may lead a jury to be "misled into believing that the 'a cause'/'substantial factor' standard does not apply" to the assessment of the causation of the injuries. <u>Pennell v. Am. Family Mut. Ins. Co.</u>, 392 Wis. 2d 2019, 228, 943 N.W.2d 892 (2020).

**1500** <div align="center">WIS JI-CIVIL</div> **1500**

On distinction of active and passive negligence of a passenger as related to the cause question, see Theisen v. Milwaukee Auto Ins. Co., 18 Wis.2d 91, 105, 118 N.W.2d 140 (1962), and McConville v. State Farm Mut. Auto Ins. Co., 15 Wis.2d 374, 385, 113 N.W.2d 14 (1962).

Lookout and failure to warn on the part of a guest may in exceptional cases be a substantial factor or a cause of the collision or accident, but ordinarily such negligence is not, although it may be, a cause of his or her injuries. Theisen v. Milwaukee Auto Ins. Co., supra.

If there is more than one cause, it is prejudicial error to say "the cause" instead of "a cause." Reserve Supply Co. v. Viner, 9 Wis.2d 530, 533, 101 N.W.2d 663 (1960). See also Clark v. Leisure Vehicles, Inc., 96 Wis. 2d 607, 290 N.W.2d 630 (1980).

If there is no issue of comparative negligence, it is preferable to use the term "the cause" instead of "a cause." Spleas v. Milwaukee & Suburban Transp. Corp., 21 Wis.2d 635, 639, 124 N.W.2d 593 (1963). In this instance, eliminate sentences 2 and 3 of the instruction.

The supreme court will follow the substantial factor concept of causation under which there may be several substantial factors contributing to the same result. Sampson v. Laskin, 66 Wis.2d 318, 326, 224 N.W.2d 594 (1975). See also Morgan v. Pennsylvania Gen. Ins. Co., 87 Wis.2d 723, 275 N.W.2d 660 (1979).

It need not be the sole factor, the primary factor, only a substantial factor. Schnabl v. Ford Motor Co., 54 Wis.2d 345, 353-54, 195 N.W.2d 602, 198 N.W.2d 161 (1972).

It is not important that the defects alleged did not cause the initial accident as long as they were a substantial factor in causing injury. Arbet v. Gussarson, 66 Wis.2d 551, 557, 225 N.W.2d 431 (1975). See also Sumnicht v. Toyota Motor Sales, 121 Wis.2d 338, 360 N.W.2d 2 (1984).

The word "substantial" is used to denote the fact that conduct has such an effect in producing the harm as to lead a reasonable person to regard the conduct as a cause of the harm, using the word "cause" in the popular sense in which there always is implicit the idea of responsibility. Retzlaff v. Soman Home Furnishings, 260 Wis. 615, 620, 51 N.W.2d 514 (1952).

The cause may be differently expressed in specific situations. See, for example, Wis JI-Civil 1023.3 Cause in Medical Malpractice—Informed Consent Cases.

**Policy Factors**. Policy factors may be applied by the court to limit liability for remote, extraordinary, highly unusual, or conscience-shocking results of harm. Farmers Mut. Auto Ins. Co. v. Gast, 17 Wis.2d 344, 117 N.W.2d 347 (1962); Dombrowski v. Albrent Freight & Storage Corp., 264 Wis. 440, 446, 59 N.W.2d 465 (1953); Pfeifer v. Standard Gateway Theater, Inc., supra at 238-39; O'Connell v. Old Line Life Ins. Co., 227 Wis. 671, 673-74, 278 N.W. 458 (1938); Osborne v. Montgomery, supra at 237; Kerwin v. Chippewa Shoe Mfg. Co., 163 Wis. 428, 431-33, 157 N.W. 1101 (1916); Habrouck v. Armour & Co., 139 Wis. 357, 366, 121 N.W. 157 (1909); Parnell, "Causation," Feb. 1957 Wis. Bar Bull. 17.

## 1580   COMPARATIVE NEGLIGENCE: PLAINTIFF AND ONE OR MORE DEFENDANTS

If, by your previous answers, you are required to answer this question, you will determine how much and to what extent each party is to blame for causing the (injury) (damage) (accident). You will decide the percentage (a portion of 100%) attributable to each party in causing the (injury) (damage) (accident).

The burden of proof on these subdivisions is on the party who asserts the percentage of causal negligence attributable to the other, and that party must satisfy you by the greater weight of the credible evidence, to a reasonable certainty, what your answer should be.

### COMMENT

The instruction and comment were originally published in 1972. The instruction and comment were revised in 1979 and 2010.

See Lovesee v. Allied Dev. Corp., 45 Wis.2d 340, 344-45, 173 N.W.2d 196 (1969); see also Taylor v. Western Casualty & Sur. Co., 270 Wis. 408, 71 N.W.2d 363 (1955); Grana v. Summerford, 12 Wis.2d 517, 107 N.W.2d 589 (1961).

**Burden of Proof.** See McGuigan v. Hiller Bros., 214 Wis. 388, 393, 253 N.W. 403 (1934); Gauthier v. Carbonneau, 226 Wis. 527, 537, 277 N.W. 135 (1938); Biersach v. Wolf River Paper & Fiber Co., 247 Wis. 536, 549, 20 N.W.2d 658 (1945); Vogel v. Vetting, 265 Wis. 19, 28, 60 N.W.2d 399 (1953).

**Comparison Issues.** In May v. Skelly Oil Co., 83 Wis.2d 30, 264 N.W.2d 574 (1978), the court proposed in dictum that the negligence of an injured claimant should be compared to the combined negligence of the parties who caused the claimant's injuries. However, in Reiter v. Dyken, 95 Wis.2d 461, 290 N.W.2d 510 (1980), and Wisconsin Natural Gas v. Ford, Bacon & Davis Constr., 96 Wis.2d 314, 291 N.W.2d 825 (1980), the court declared that it would not make the change proposed in May. Instead, the court reaffirmed the prevailing common law rule of individual comparison, i.e., that plaintiff's causal negligence is individually compared to the causal negligence of each defendant. In its decision, the court in Reiter and Ford, Bacon & Davis stated that a change from the individual comparison rule to a combined comparison rule, as proposed in May, should be the result of legislative action. In 1979, however, the legislature failed to enact such a bill. The legislation, 1979 S.B. 589, would have amended the comparative negligence statute (§ 895.045) by adopting a combined or collective comparison approach.

©2011, Regents, Univ. of Wis.

**1580**               **WIS JI-CIVIL**                **1580**

    In <u>Ford, Bacon & Davis</u>, the court also refused to abolish the doctrine of joint and several liability. 96 Wis.2d at 330-34.

    In 1986, the court reaffirmed the holding in <u>Reiter v. Dyken</u>, <u>supra</u>, that a plaintiff's causal negligence is compared with the negligence of each defendant under the individual comparison rule. <u>Delvaux v. Langenberg</u>, 130 Wis.2d 464, 387 N.W.2d 751 (1986).

    There is no comparison under the comparative negligence statute (§ 895.045(1)) between intentional and negligent tortfeasors. <u>Fleming v. Threshermen's Mutual Insurance Company</u>, 131 Wis.2d 123, 388 N.W.2d 908 (1986).

    **Contribution and Indemnification**: A negligent tortfeasor may have a claim for indemnification against an intentional tortfeasor should their concurrent conduct produce damage or injury. <u>Fleming v. Threshermen's Mutual Insurance Company</u>, <u>supra</u>. An intentional tortfeasor is not entitled to contribution from a negligent joint tortfeasor. <u>Imark Industries, Inc. v. Arthur Young & Company</u>, 148 Wis.2d 605, 436 N.W.2d 311 (1989), reversing in part and remanding 141 Wis.2d 114, 414 N.W.2d 57 (Ct. App. 1987).

    **Verdict Format for Cases Involving Joint Tortfeasors and Intentional and Negligent Conduct**: Cases involving negligent conduct and intentional conduct by joint tortfeasors present special problems in structuring a verdict. The committee drafted the suggested verdict shown below for a sample case involving a claim of intentional or negligent conduct by an assailant and a claim of negligent conduct by a property owner for failing to prevent the assault. The verdict questions assume the plaintiff alleges that the assailant's acts were either intentional or negligent.

<div align="center">

SUGGESTED VERDICT

(For Case Involving Both Intentional and Negligent Tortfeasors;
**Note**: Defendant 1 refers to the alleged assailant.
Defendant 2 refers to the alleged negligent property owner.)

</div>

Question 1:    Did (<u>Defendant 1</u>) intentionally [sexually assault, rob, batter, etc.] (Plaintiff) on ( date ) at ( location )?

                                   Answer:  _____
                                                      (Yes or No)

If you answered Question 1 "yes," then go to and answer Question 2.

If you answered Question 1 "no," then and only then answer Question 3.

Question 2:    Was the intentional conduct of (<u>Defendant 1</u>) a cause of (Plaintiff)'s injuries on ( date ) at ( location )?

                                   Answer:  _____
                                                      (Yes or No)

If you answered Question 2 "yes," go to and answer Question 5.

If you answered Question 2 "no," go to and answer Question 3.

©2011, Regents, Univ. of Wis.

**1580**                    **WIS JI-CIVIL**                    **1580**

Question 3:    At and immediately prior to the incident on ( date ) at ( location ), was (Defendant 1) negligent?

                                        Answer:   _____
                                                          (Yes or No)

If you answered Question 3 "yes," go to and answer Question 4.

If you answered Question 3 "no," go to and answer Question 5.


Question 4:    Was the negligence of (Defendant 1) a cause of (Plaintiff)'s injuries on ( date ) at ( location )?

                                        Answer:   _____
                                                          (Yes or No)

Question 5:    At and immediately prior to the incident on ( date ) at ( location ), was (Defendant 2) negligent?

                                        Answer:   _____
                                                          (Yes or No)

If you answered Question 5 "yes," go to and answer Question 6.

If you answered Question 5 "no," go to and answer Question 7.


Question 6:    Was the negligence of (Defendant 2) a cause of (Plaintiff)'s injuries on ( date ) at ( location )?

                                        Answer:   _____
                                                          (Yes or No)

Question 7:    At and immediately prior to the incident on ( date ) at ( location ), was (Plaintiff) negligent?

                                        Answer:   _____
                                                          (Yes or No)

If you answered Question 7 "yes," go to and answer Question 8.

If you answered Question 7 "no," go to and answer Question 9.


©2011, Regents, Univ. of Wis.

**1580**                               **WIS JI-CIVIL**                               **1580**


Question 8:      Was the negligence of (Plaintiff) a cause of (Plaintiff)'s injuries on ( date ) at ( location )?

                                                         Answer:  _____
                                                                      (Yes or No)


If you have answered "yes" to two or more of Questions 4, 6 or 8, answer the following question relative
to each party that you determined was a cause of (Plaintiff)'s injuries.


**\* NOTE:  If you answered Question 2 "yes" concerning (Defendant 1), do not include (him) (her) in
answer to the following question.**


Question 9:      Taking the combined negligence of each party that you have determined was a cause of
                 injuries to (Plaintiff) as 100%, what percentage of the negligence do you attribute to:

        \*       A.     (Defendant 1)                      _____%

                 B.     (Defendant 2)                      _____%

                 C.     (Plaintiff)                        _____%

                                        TOTAL          100%

Question 10:     Regardless of how you have answered any of the previous questions, answer this question:
                 What sum of money will fairly and reasonably compensate (Plaintiff) for (her) (his)
                 injuries on ( date ) at ( location ) in damages with respect to:

                 A.     Past Medical Expenses                  $ _____

                 B.     Past Wage Loss                         $ _____

                 C.     Past Pain, Suffering and Disability    $ _____

                 D.     Future Medical Expenses                $ _____

                 E.     Future Wage Loss                       $ _____

                 F.     Future Pain, Suffering and Disability  $ _____


©2011, Regents, Univ. of Wis.

**1700**                              **WIS JI-CIVIL**                              **1700**

**1700   DAMAGES: GENERAL**

The verdict contains the following damage questions, numbered __ through __.

[Read question(s).]

**[Note: Select the following paragraphs which are appropriate.]**

[I have answered question(s) _____ because the parties have agreed on the amount(s) to be inserted. You should not conclude from the fact I have answered (this) (these) question(s) as to the amount of damages that any party has admitted fault or that any party may be responsible for the amount(s) inserted. Finally, you should not assume that because I have answered (this) (these) question(s), that a party already has or necessarily will recover (this) (these) amount(s). Parties, may, as here, agree on an amount of damages without admitting they are responsible for the damages.]

[You must answer the damage question(s) no matter how you answered any of the previous questions in the verdict. The amount of damages, if any, found by you should in no way be influenced or affected by any of your previous answers to questions in the verdict.]

[In answering the damage question(s), completely disregard any percentages which you may have inserted as your answers to the subdivisions of question _____, the comparative negligence question.]

[In answering the damage questions, be careful not to include or duplicate in any answer amounts included in another answer made by you or me.]

[Your answer(s) to the damage question(s) should not be affected by sympathy or resentment (or by the fact that one (or more) of the parties from whom damages are sought

©2016, Regents, Univ. of Wis.

**1700** **WIS JI-CIVIL** **1700**

(is an insurance corporation) (are insurance corporations)); nor should you make any deductions because of a doubt in your minds as to the liability of any party to this action.]

[**Note: Do not use this paragraph if Wis JI-Civil 202 is used**: In considering the amount to be inserted by you in answer to each damage question, the burden of proof rests upon each person claiming damages to satisfy you by the greater weight of the credible evidence, to a reasonable certainty, that the person sustained damages with respect to the element or elements mentioned in the question and the amount of the damages. The greater weight of the credible evidence means that the evidence in favor of an answer has more convincing power than the evidence opposed to it. Credible evidence means evidence you believe in light of reason and common sense. "Reasonable certainty" means that you are persuaded based upon a rational consideration of the evidence. Absolute certainty is not required, but a guess is not enough to meet the burden of proof. The amount inserted by you should reasonably compensate the person for the damages from the accident.]

[Determining damages for (pain and suffering) (insert other type of damages) cannot always be made exactly or with mathematical precision; you should award as damages amounts which will fairly compensate (<u>named party</u>) for (his) (her) injuries.]

[The amount you insert in answer to each damage question is for you to determine from the evidence. What the attorneys ask for in their arguments is not a measure of damages. The opinion or conclusions of counsel as to what damages should be awarded should not influence you unless it is sustained by the evidence. Examine the evidence – carefully and dispassionately – and determine your answers from the evidence in the case.]

©2016, Regents, Univ. of Wis.

**1700**                              **WIS JI-CIVIL**                              **1700**

**COMMENT**

This instruction and comment were approved in 1978. The instruction was revised in 2000, 2002 and 2003. The revision in 2002 conformed the language regarding the burden of proof to the Committee's 2002 revisions to Wis. JI-Civil 200 and 205, the instructions on the civil burdens of proof. See Wis. JI-Civil 200, Comment. An editorial correction was made in 2004. The change in 2003 revised the second paragraph on page 1 and the first paragraph on page 2. The comment was revised in 2016.

These are suggested general instructions, which may be used when appropriate, but paragraph four should always be used when there is a comparison of negligence question.

Additional instructions on the need for assessing damages even though mathematical certainty cannot be attained are contained in Wis JI-Civil 1722 (apportionment among tortfeasors) and in Wis JI-Civil 1755 (pain and suffering).)

An adaptation of this instruction was discussed in Johnson v. Ray, 99 Wis.2d 777, 299 N.W.2d 849 (1981).

**Answering Special Verdict Questions in Medical Negligence Cases**. See Comment to Wis JI-Civil 1023.

©2016, Regents, Univ. of Wis.

## 1731  DAMAGES: DUTY TO MITIGATE: NEGLIGENCE OR BREACH OF CONTRACT

A person who has been damaged may not recover for losses that (he) (she) knows or should have known could have been reduced by reasonable efforts. It is not reasonable to expect a person to reduce (his) (her) damages if it appears that the attempt may cause other serious harm. A person need not take an unreasonable risk, subject (himself) (herself) to unreasonable inconvenience, incur unreasonable expense, disorganize (his) (her) business, or put (himself) (herself) in a position involving loss of honor and respect.

If you find that a reasonable person would have taken steps to reduce damages and if you find that (plaintiff) did not take such steps, then you should not include as damages any amount which (plaintiff) could have avoided. If a reasonable person would not have taken steps to reduce loss under the circumstances in this case, then (plaintiff)'s failure to act may not be considered by you in determining (plaintiff)'s damages.

The burden of proof is on (defendant) to satisfy you to a reasonable certainty, by the greater weight of the credible evidence, that (plaintiff) should have taken steps to reduce (his) (her) loss and (failed to do so) (did not).

**COMMENT**

This instruction was approved by the Committee in 1982. It was re-titled and updated in 2011. The comment was updated in 1990 and 2011.

Kuhlman, Inc. v. G. Heileman Brewing Co., Inc., 83 Wis.2d 749, 266 N.W.2d 382 (1978); Sprecher v. Monroe County Fin. Co. v. Thomas, 243 Wis. 568, 571, 11 N.W.2d 190 (1943); Restatement, Second, Contracts § 350.

©2012, Regents, Univ. of Wis.

**1731**                                **WIS JI-CIVIL**                                **1731**

This instruction applies to damages for breach of contract or for damages in a tort action based on negligence that relate to property damage. For an instruction explaining mitigation of damages for negligently inflicted bodily injury, see Wis JI-Civil 1730; for an instruction explaining mitigation of damages from intentional acts, see Wis JI-Civil 1732.

See Comment to Wis JI-Civil 1806 for mitigation of damages to a growing crop.

**Burden of Proof**. Although the duty to mitigate damages rests with the aggrieved party, the burden of proof is upon the defaulting party to establish that the aggrieved party failed to do all that was reasonable to mitigate his damages. Sprecher, supra at 42; Byrnes v. Metz, 53 Wis.2d 627, 631, 193 N.W.2d 765 (1972). The failure to mitigate damages is an affirmative defense which must be raised by answer or be deemed waived. Wis. Stat. §§ 802.02 and 802.06; Sprecher, supra, Schiller v. Keuffel & Esser Co., 21 Wis.2d 545, 553, 124 N.W.2d 646 (1963). However, the court, in Sprecher, said a trial court has discretion to admit proof or lack of mitigation at variance with the pleadings and to amend the pleadings to conform to the proof.

**Mitigation by Spending Money**. Where the issue of mitigation centers on whether the plaintiff could reasonably have mitigated his damages by spending a sum of money, the following paragraph, based on the decision in Sprecher, supra at 42-49, may be inserted into the instruction:

> Sometimes it is possible for an injured person to minimize his damages by spending money. A plaintiff is required to spend a sum of money to minimize his damages only if (1) the sum of money is small in comparison to the possible losses or damages and (2) it is virtually certain that the risks incurred will avoid at least a party of the losses or damages. Damages should not be decreased where only a substantial expenditure would have minimized the total loss or where it is uncertain at the time that the expenditure would have decreased damages.

An expenditure of $9,000 was held not to be insignificant or slight under the facts of the case and thus plaintiff did not fail to mitigate by making such an expenditure. Crest Chevrolet-Oldsmobile Cadillac, Inc. v. Willemsen, 129 Wis.2d 129, 384 N.W.2d 692 (1986).

©2012, Regents, Univ. of Wis.

## 3010  AGREEMENT

For a contract to be binding, three things must concur: first, the offer; second, the acceptance; and third, the consideration.

For the parties to come to an agreement, it is necessary that there be a meeting of the minds of the parties upon the essential terms and conditions of the subject about which they are agreeing; that is, they must be in accord upon the essential terms and conditions. There must be a mutual assent.

The language used and the conduct of the parties must disclose sufficiently the fact that the minds of the parties have met, or have been in accord, on all the terms of the agreement, or, in other words, disclose the fact that there has been a mutual assent. One party cannot make an agreement; both parties must, by their words or actions, assent to the agreement.

Usually, the form of an agreement is that one party makes an offer and the other party accepts the offer.

[An agreement may be written, oral, or partially written and partially oral.]

**COMMENT**

This instruction and comment were approved in 1975 and revised in 2004. A spelling error was corrected in 2010.

See, generally, 17 Am. Jur. Contracts § 18 et seq; Ballentine's Law Dictionary (2d ed.) 59.

Elements: Briggs v. Miller, 176 Wis. 321, 186 N.W. 163 (1922).

The definiteness requirement as mutual consent, or "meeting of the minds," does not mean that parties must subjectively agree to the same interpretation at the time of contracting. Management Computer Services v. Hawkins, Ash, Baptie, 206 Wis.2d 158, 557 N.W.2d 67 (1996). See also Kernz v. J.L. French Corp., 2003 WI App 140, 266 Wis.2d 124, 667 N.W.2d 751. The key is not necessarily what the parties intended to agree to, but what, in a legal sense, they did agree to, as evidenced by the language they saw fit. If parties evidentially intended to enter a contract, the trier of fact should not frustrate their intentions but rather should attach a sufficiently definite meaning to the contract language if possible. The supreme court has also said that even though the parties have expressed an agreement in terms so vague and indefinite as to be incapable of

©2011, Regents, Univ. of Wis.

interpretation with a reasonable degree of certainty, they may cure this defect by their subsequent conduct and by their own practical interpretation. Nelson v. Farmer's Mut. Automobile Ins. Co., 4 Wis.2d 36, 90 N.W.2d 123 (1958). Therefore, the court said in Management Computer Service, supra, that if the jury can determine the parties' intentions, indefiniteness disappears as a reason for refusing enforcement. Parties do not need to agree subjectively to the same interpretation at the time of contracting in order for there to be a mutual assent because a literal meeting of the minds is not required. Instead, mutual assent is judged by an objective standard, looking to the express words the parties used in the contract. Second, when parties disagree about their intentions at the time they entered into a contract, the question is one of contract interpretation for the jury, not mutual assent or contract formation. In fact, if a disagreement between parties as to their intent could support a claim of indefiniteness, juries would rarely be called upon to interpret a contract because nearly every contract challenged in court would be void for indefiniteness. Management Computer Services v. Hawkins, Ash, Baptie, supra. The supreme court also said that parties often agree to a contract provision that is ambiguous and thereby gamble on a favorable interpretation should a dispute arise, rather than take the time to work out all possible disagreements, especially since such disagreements may never have any consequence. When this occurs, the entire contract is not void for indefiniteness; instead, the parties submit to have any dispute over interpretation resolved by a jury. This is the function of a jury in a contract caseCto resolve interpretive questions founded on ambiguity.

In Management Computer Services v. Hawkins, Ash, Baptie, supra, the supreme court said it is well established that a material breach by one party may excuse subsequent performance by the other. However, a party is not automatically excused from future performance of contract obligations every time the other party breaches. If the breach is relatively minor and not of the essence, the plaintiff is himself or herself still bound by the contract; he or she cannot abandon performance and get damages for a total breach by the defendant. In other words, there must be so serious a breach of the contract by the other party as to destroy the essential objects of the contract. Moreover, even where such a material breach has occurred, the nonbreaching party may waive the claim of materiality through its actions.

The issue of whether a party's breach excuses future performance of the contract by the nonbreaching party presents a question of fact. The restatement of contracts lists several circumstances relevant to this determination, including the extent to which the injured party will be deprived of the benefit that he or she reasonably expected, and the extent to which the injured party can be adequately compensated for his or her loss. Restatement (Second) of Contract §§ 241, 242 (1981). In Management Computer Services, supra, the court said the special verdict used by the trial court was not sufficient to support the circuit court's determination that the jury, in considering the evidence that was presented without doubt, found that the plaintiff's breach was a material breach of the contract, particularly in light of the lack of instruction the jury received on the issue.

For a discussion of how to structure the special verdict on a material breach issue, see Management Computer Services v. Hawkins, Ash, Baptie, supra.

An agreement so vague as to be incapable of a reasonably certain interpretation may be cured by the parties' subsequent conduct and their own practical interpretation. Nelsen v. Farmers Mut. Auto Ins. Co.,4 Wis.2d 36, 51, 90 N.W.2d 123 (1958); 1 Corbin, Contracts § 101 (1950, Supp. 1960).

An acceptance which varies from the offer in respect to essential terms amounts to a rejection. Todorovich v. Kinnickinnic Mut. Loan & Bldg. Ass'n, 238 Wis. 39, 298 N.W. 226 (1941).

©2011, Regents, Univ. of Wis.

**3053**                      **WIS JI-CIVIL**                      **3053**

## 3053   BREACH OF CONTRACT

A party to a contract breaches it when performance of a duty under the contract is due and the party fails to perform. Failing to perform a duty under the contract includes defectively performing as well as not performing at all.

**COMMENT**

This instruction and comment were approved in 2006.

Restatement of Contracts (Second) sec. 235; <u>Steele v. Pacesetter Motor Cars, Inc.</u>, 2003 WI App 242, 267 Wis.2d 873.

©2007, Regents, Univ. of Wis.

## 3201   IMPLIED WARRANTY: MERCHANTABILITY DEFINED

An "implied warranty" is a warranty which arises by operation of law from the acts of the parties or circumstances of the transaction. It requires no intent or particular language or action by the seller to create it.

A warranty that the goods (product) shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind. "Merchantability" means reasonable fitness for the general purpose for which the goods (product) are (is) sold. When a purchase is made, the seller warrants or guarantees that the goods (product) purchased:

[would pass without objection in the trade under the contract description;]

[in the case of bulk goods, are of average quality within the description;]

[are fit for the ordinary purposes for which such goods are used;]

[run, within the variations permitted by the agreement, of even kind, quality, and quantity within each unit and among all units involved;]

[are adequately contained, packaged, and labeled as the agreement may require;]

[conform to the promises or affirmations of fact made on the container or label if any.]

**COMMENT**

The instruction and comment were originally published in 1971. The comment was updated in 1980 and 2009.

Wis. Stat. § 402.314; "Merchant" is defined in Wis. Stat. § 402.104(3).

©2009, Regents, Univ. of Wis.

The issue of merchantability presents a question of fact. <u>Takera v. Ford Motor Co.</u>, 86 Wis.2d 140, 271 N.W.2d 653 (1978). A finding of merchantability requires an examination of the defects alleged to exist in the particular product in light of the standard of quality expected for that product. <u>Takera v. Ford Motor Co.</u>, <u>supra</u> at 146.

Where automobiles are concerned, the term "unmerchantable" has only been applied where a single defect poses a substantial safety hazard or numerous defects classify the car as a "lemon." <u>Takera v. Ford Motor Co.</u>, <u>supra</u> at 146. See also <u>Murray v. Holiday Rambler, Inc.</u>, 83 Wis.2d 406, 265 N.W.2d 513 (1978).

Wis. Stat. § 402.314(1) "imposes an implied warranty, not because of a sale alone, but because of the special responsibilities that are placed upon a merchant who is defined as one holding himself out as having knowledge and skill peculiar to the trade involved." <u>Samson v. Riesing</u>, 62 Wis.2d 698, 215 N.W.2d 662 (1973). In <u>Samson</u>, the court held that the Wauwatosa Band Mothers, selling food in a fund raising activity, were not merchants as contemplated by the statute.

Under Wis. Stat. § 402.314, an implied warranty of merchantability can be excluded or modified pursuant to the provisions of Wis. Stat. § 402.316. <u>Recreatives, Inc. v. Myers</u>, 67 Wis.2d 255, 226 N.W.2d 474 (1975).

For the measure of damages for a claim under Wis. Stat. § 402.314, see Wis. Stat. § 402.714(2).

©2009, Regents, Univ. of Wis.

## 3202   IMPLIED WARRANTY: FITNESS FOR PARTICULAR PURPOSE

An "implied warranty" is a warranty which arises by operation of law from the acts of the parties or circumstances of the transaction. It requires no intent or particular language or action by the seller to create it.

When the seller at the time of sale has reason to know any particular purpose for which the goods (product) are required and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods (product), there is an implied warranty that the goods (product) shall be fit for such purpose. In determining whether the goods (product) were fit for such purpose, you will consider its use in the light of common knowledge of the nature of the goods (product) sold. [A warranty of this kind does not mean that the goods (product) can be used with absolute safety, or that they are perfectly adapted to the intended use, but only that they shall be fit for such purpose.]

**COMMENT**

The instruction and comment were originally published in their present form in 1971. The comment was updated in 1980. Editorial changes were made in 1994. No substantive changes were made to the instruction.

Wis. Stat. § 402.315.

In order for there to be a jury question as to an implied warranty of fitness for a particular purpose, there must be some credible evidence in the record demonstrating reliance by the buyer. Valiga v. National Food Co., 58 Wis.2d 232, 257, 206 N.W.2d 377 (1973). See also Wisconsin Elec. Power Co. v. Zallea Bros., Inc., 606 F.2d 697 (7th Cir. 1979). Moreover, the supreme court has stated that for this statutory section to be applicable the seller must select the goods. Ewers v. Eisenzopf, 88 Wis.2d 482, 276 N.W.2d 802 (1979). In supporting this holding, the court in Ewers quoted the following explanation from Williston, Sales:

Obviously, in order for the implied warranty of fitness for a particular purpose to arise, and for the buyer to be able to apply § 2-315, there must be a reliance on the seller by the buyer and that seller must select goods which turn out to be unfit for the particular purpose indicated by the buyer. Where the buyer makes his own selection

©1994, Regents, Univ. of Wis.

of goods, he cannot expect to recover upon the implied warranty of fitness for a particular purpose, since he does not meet the criteria for applying § 2-315 . . . . Id. at Vol. 3 at 125 (4th ed. 1974).

The above instruction does not apply if there are exclusions or modifications of warranties as listed in Wis. Stat. § 402.316.

By adopting the Uniform Commercial Code the "trade name exception" of the old Wis. Stat. § 121.15(4) has been eliminated. Under the UCC, the fact that the article was ordered by trade name would merely be a factor in determining whether the buyer relied on the seller's skill or judgment to furnish suitable goods.

Accordingly, a number of earlier Wisconsin decisions discussing this exception are no longer applicable. E.g., Ohio Electric Co. v. Wisconsin-Minnesota Light and Power Co., 161 Wis. 632, 155 N.W. 112 (1915); Northwestern Blaugas Co. v. Guild, 169 Wis. 98, 171 N.W. 662 (1919); Fox v. Boldt, 172 Wis. 333, 179 N.W. 1 (1920); Russell Grader Mfg. Co. v. Budden, 197 Wis. 615, 222 N.W. 788 (1929); Milwaukee Boiler Co. v. Duncan, 87 Wis. 120, 58 N.W. 232 (1894); LaCrosse Plow Co. v. Helgeson, 127 Wis. 622, 106 N.W. 1094 (1906); LaCrosse Plow Co. v. Brooks, 142 Wis. 640, 126 N.W. 3 (1910).

For a general discussion of what constitutes a "particular purpose," see 83 A.L.R.3d 669 (1978).

©1994, Regents, Univ. of Wis.

## 3205   IMPLIED WARRANTY: EXCLUSION OR MODIFICATION

The seller may exclude or modify an implied warranty of merchantability, or any part of the warranty, provided, at the time of the sale, the seller specifically informs the buyer that any implied warranty as to merchantability is to be excluded or modified.

Any written exclusion or modification of an implied warranty set forth in any contract, advertisement, label, or brochure must, at the time of sale, be called directly to the attention of the buyer.

Unless the circumstances indicate otherwise, all implied warranties are excluded by expressions such as "with all faults," "as is," or other language which in common understanding calls the buyer's attention to the exclusion of warranties and makes plain that there is no implied warranty.

### COMMENT

The instruction and comment were originally published in 1971 and revised in 2009.

This instruction is given only in situations where it is contended that an exclusion or modification was made orally, or where there is a written <u>inconspicuous</u> exclusion or modification of an implied warranty which it is contended was at the time of sale called to the attention of the buyer. When the modification or exclusion is made in writing only, no instruction is required because the existence or nonexistence of a modification or exclusion is for the court to decide.

Wis. Stat. § 402.316(2); Wis. Stat. § 402.316(3).

"Conspicuous" is defined in Wis. Stat. § 401.201(10).

<u>Pokrojac v. Wade Motors, Inc.</u>, 266 Wis. 398, 402, 63 N.W.2d 720 (1954); <u>Hyland v. GCA Tractor & Equip. Co.</u>, 274 Wis. 586, 589-591, 80 N.W.2d 771 (1957); 24 A.L.R.3d 465 (1966).

See Wis JI-Civil 3206 for another means of exclusion.

<u>Murray v. Holiday Rambler, Inc.</u>, 83 Wis.2d 406, 414, 265 N.W.2d 513 (1978); <u>Recreatives, Inc. v. Myers</u>, 67 Wis.2d 255, 226 N.W.2d 474 (1975).

©2009, Regents, Univ. of Wis.

## 3207   IMPLIED WARRANTY: USE OF PRODUCT AFTER THE DEFECT KNOWN

When a buyer of a product knows or in the exercise of ordinary care should have known that the product was defective and in spite of this knowledge uses the product and as a result of using it sustains injury or damage, then there is no breach of warranty.

**COMMENT**

The instruction and comment were originally published in 1971. The instruction was updated in 2009. The comment was updated in 1980.

Northern Supply Co. v. Vangard, 117 Wis. 624, 94 N.W. 785 (1903); 33 A.L.R.2d 514 (1954).  See also Valiga v. National Food Co., 58 Wis.2d 232, 257-59, 206 N.W.2d 377 (1973); Concrete Equip. Co. v. Smith Contract Co., Inc., 358 F. Supp. 1137 (W.D. Wis. 1973).

©2009, Regents, Univ. of Wis.

## 3208   IMPLIED WARRANTY: FAILURE TO EXAMINE PRODUCT

When a buyer before entering into the contract has examined the goods (product) or the sample or model as fully as he or she desired or has refused to examine the goods (product), there is no implied warranty with regard to defects which an examination ought in the circumstances to have revealed to him or her.

**COMMENT**

The instruction and comment were originally published in 1971. The instruction was updated in 2009. The comment was updated in 1980.

Wis. Stat. § 402.316(3)(b); <u>Valiga v. National Food Co.</u>, 58 Wis.2d 232, 257, 206 N.W.2d 377 (1973).

See also <u>Nelson v. Boulay Bros. Co.</u>, 27 Wis.2d 637, 135 N.W.2d 254 (1965).

©2009, Regents, Univ. of Wis.

## 3210   IMPLIED WARRANTY: IMPROPER USE

An "implied warranty" is a warranty which arises by operation of law from the acts of the parties or circumstances of the transaction. It requires no intent or particular language or action by the seller to create it.

Any warranty of a product sold is based on the assumption that such product will be used in a manner suitable to its intended use. The seller is entitled to assume, in the absence of information to the contrary, that a use will be made of the product, for the purpose for which it is intended and in accordance with directions properly given. There is no breach of warranty if the product sold is put to a use for which the product was not intended or used not in accordance with the directions given as to its use.

**COMMENT**

The instruction and comment were originally published in their present form in 1971. The comment was updated in 1980. Editorial changes were made in 1994. No substantive changes were made to the instruction.

Recreatives, Inc. v. Myers, 67 Wis.2d 255, 264, 226 N.W.2d 474 (1975). In Recreatives, Inc., the court quoted with approval the following excerpt from Williston, Sales:

. . . . The whole point of an implied warranty of fitness for a particular purpose is that the product sold by the seller to the buyer will be suitable for the specific purpose which the buyer has, and any similar product which the seller may sell to the buyer which is not so suited will breach that warranty of fitness for the particular purpose. Of course abnormal or unique use may result in the prevention of the application of this implied warranty. 3 Williston, Sales (4th ed. 1974), p. 120, § 19-6. (Emphasis added.)

©1994, Regents, Univ. of Wis.

## 3211   IMPLIED WARRANTY: NOTICE OF BREACH

A seller is not liable for a breach of warranty unless the buyer notifies the seller of the breach (defect) within a reasonable time after he or she discovers or should have discovered any breach. What is a reasonable time depends upon the nature of the act to be done, the nature of the contract, and the facts and circumstances of the transaction. The notice need not be in any particular form and it may be oral or written. It must, however, fairly inform the seller of a breach of warranty (defect).

## COMMENT

The instruction and comment were originally published in 1971. The instruction was revised in 1992. The comment was updated in 1980 and 1992.

Wis. Stat. § 402.607(3)(a); It is no longer a requirement under § 402.607(3)(a) that the notice must inform the seller that the buyer looks to the seller for damages for the breach. Paulson v. Olson Implement Co., Inc., 107 Wis. 2d 510, N.W.2d 855 (1982). See also Wojciuk v. United States Rubber Co., 19 Wis.2d 224, 235(a), 120 N.W.2d 47 (1963); Kennedy-Ingalls Corp. v. Meissner, 11 Wis.2d 371, 384, 105 N.W.2d 696 (1960).

Wis. Stat. § 401.204 allows the seller to fix any time which is not manifestly unreasonable. For a discussion of the reasonableness of limits on warranties, see Takera v. Ford Motor Co., 86 Wis.2d 140, 271 N.W.2d 653 (1978).

In Samson v. Riesing, 62 Wis.2d 698, 215 N.W.2d 662 (1974), the court reaffirmed the holding in Tew v. Marg, 246 Wis. 245, 249, 16 N.W.2d 795 (1944), that implied warranties require the statutory notice of breach.

©1993, Regents, Univ. of Wis.

## 3220   EXPRESS WARRANTY: GENERAL

An "express warranty" is an express statement of fact material to the transaction which is a part of the contract between the parties (and collateral to the express object of such contract). Any direct and positive representation of a fact (affirmation of a fact) (or acts equivalent to such affirmation) made by the seller to the purchaser during the negotiations to effect a sale respecting the quality of the article or the efficiency of the property sold, constitutes a warranty if relied upon by the purchaser in making the purchase.

The principal elements of an express warranty are: (1) (affirmation of a material fact) (a direct and positive representation of a fact) (a promise material to the transaction by the seller); (2) inducement to the buyer; (3) reliance thereon by the buyer. The test in determining whether (name) made an express warranty is not whether the seller actually intended to be bound by the statement but whether he or she made (an affirmation of a material fact) (a direct and positive representation of a fact) (a promise material to the transaction), the natural tendency of which was to induce a sale and which in fact did induce a sale.

In your consideration of the question as to whether  (name)  made an express warranty [here set out the purported warranty], you will take into consideration what the parties said at the time of the negotiations of the sale; the relation between the parties and what both parties fairly understood by the language that was used at the time of the sale, together with all other credible evidence in this case bearing upon this subject matter.

No particular form of words or expression is necessary to constitute an express warranty; nor is it necessary that the seller use formal words such as "warrant" or "guarantee," or other words of precisely the same meaning. Any word of affirmation used in such a manner as to show that one party expects or desires that the other party rely thereon as

©1994, Regents, Univ. of Wis.

a matter of fact, instead of taking it as an expression of opinion or mere sales talk, constitutes a warranty. But a statement purporting to be merely the seller's opinion or belief with respect to the transaction, not amounting to a positive statement or affirmation of fact, does not create a warranty.

**COMMENT**

The instruction and comment were originally published in their present form in 1967. The comment was updated in 1980. Editorial changes were made in 1994 to address gender references in the instruction. No substantive changes were made to the instruction.

As to the second paragraph, see Ewers v. Eisenzopf, 88 Wis.2d 482, 489, 276 N.W.2d 802 (1979).

An "affirmation of fact" is any statement concerning a subject matter of a transaction, which might otherwise be only an expression of an opinion or "seller's talk," and which is affirmed as an existing fact material to the transaction and reasonably induces the other party to consider and rely upon it as a fact. 3 Pomeroy's Equity Jurisprudence (5th) §§ 877 and 878 (1941). 2A, Words and Phrases, Affirmation of Fact, 361 (1955). See also 94 A.L.R.3d 729 (1979).

As to the last paragraph, see Murray v. Holiday Rambler, Inc., 83 Wis.2d 406, 265 N.W.2d 513 (1978); Acme Equip. Corp. v. Montgomery Coop. Creamery Ass'n, 29 Wis.2d 355, 138 N.W.2d 729 (1965); Borg v. Downing, 221 Wis. 463, 266 N.W. 182 (1936); White v. Stelloh, 74 Wis. 435, 43 N.W. 99 (1889); Tenney v. Cowles, 67 Wis. 594, 31 N.W. 221 (1887).

A statement subsequent to the bargain cannot amount to a warranty unless there is a new consideration. Zinzow Constr. Co. v. Giovannoni, 263 Wis. 185, 56 N.W.2d 782 (1952).

In Garner v. Charles A. Krause Milling Co., 193 Wis. 80, 213 N.W. 637 (1927), it was said that the rights of parties to a sales contract are not necessarily determined exclusively under the Uniform Sales Act. Wis. Stat. §§ 401.102(3) and 401.103 make it clear that the Uniform Commercial Code is not necessarily the exclusive determinant of the parties' rights to a sales contract.

See also 67 A.L.R.2d 619, 633 (1959); 77 C.J.S. Sales § 310 (1952, Supp 1963).

For earlier Wisconsin cases involving express warranties, see Kathan v. Comstock, 140 Wis. 427, 122 N.W. 1044 (1909); Matteson v. Rice, 116 Wis. 328, 92 N.W. 1109 (1903); Hoffman v. Dixon, 105 Wis. 315, 81 N.W. 491 (1900); White v. Stelloh, 74 Wis. 435, 43 N.W. 99 (1889); Neave v. Arntz, 56 Wis. 174, 14 N.W. 41 (1882).

See Wis JI-Civil 3230 and Wis. Stat. § 402.313 for express warranties under the Uniform Commercial Code.

©1994, Regents, Univ. of Wis.

## 3225   EXPRESS WARRANTY: STATEMENT OF OPINION

A statement which is not based on actual knowledge but is a mere expression of a conclusion or judgment is an opinion. If the statement deals with a matter of common knowledge, it is generally an opinion since the parties to the agreement are both deemed to know facts of common knowledge. Where the thing represented is susceptible of actual knowledge, it is one of fact. A seller may resort to "puffing" his or her goods, provided his or her salesmanship remains within the range of "dealer's talk" and constitutes a mere expression of opinion.

"Puffing" refers generally to an expression of opinion not made as a representation of fact.

If the statement, although it is "puffing" or an opinion, is stated as a material fact and is made for the purpose of inducing a sale, and does in fact induce the sale, then such statement becomes an express warranty. In determining whether the statement made by the seller is mere "puffing" or an expression of opinion or a statement of fact, you will consider the surrounding circumstances under which it was made, the way the statement was made, and the usual effect and meaning of the words used in such statement.

**COMMENT**

The instruction and comment were originally published in their present form in 1971. The comment was updated in 1980. Editorial changes were made in 1994 to address gender references in the instruction. No substantive changes were made to the instruction.

Wis. Stat. § 402.313(2) states, in part: "an affirmation merely of the value of the goods or a statement purporting to be merely the seller's opinion or commendation of the goods does not create a warranty."

In Ewers v. Eisenzopf, 88 Wis.2d 482, 491, 276 N.W.2d 802 (1979), the court stated:

©1994, Regents, Univ. of Wis.

Courts of this state should carefully consider and evaluate the circumstances surrounding transactions where there is a claim made of an express warranty in a sale. Judicial decisions must not inhibit the free flow of relevant information between the buyer and the seller. Nevertheless, a merchant must be cautious in going beyond "puffing" in making claims and representations about their product. Further, the seller must give specific directions when he claims the goods are suitable for an intended and limited use. A merchant's vague or incomplete directions will induce the purchase of merchandise and often these directions are as misleading as when erroneous affirmations of fact are given. A merchant who knows the limitations of his product will bear no liability as long as he is truthful and accurate in his representations to the customer.

See also <u>Kennedy-Ingalls Corp. v. Meissner</u>, 11 Wis.2d 371, 105 N.W.2d 748 (1960); <u>Vodrey Pottery Co. v. H. E. Home Co.</u>, 117 Wis. 1, 93 N.W. 823 (1903); <u>White v. Stelloh</u>, 74 Wis. 435, 43 N.W. 99 (1889); <u>Tenney v. Cowles</u>, 67 Wis. 594, 31 N.W. 221 (1887).

©1994, Regents, Univ. of Wis.

## 3240   NEGLIGENCE: DUTY OF MANUFACTURER

It is the duty of a manufacturer to exercise ordinary care in the design, construction, and manufacture of its product so as to render the product safe for its intended use and also safe for unintended uses which are reasonably foreseeable.

It is the further duty of the manufacturer, in the exercise of ordinary care, to make all reasonable and adequate tests and inspections of its product so as to guard against any defective condition which would render such product unsafe when used as it is intended to be used. A manufacturer is charged with the knowledge of its own methods of manufacturing its product and the defects in such methods, if any.

Failure of the manufacturer to perform any such duty constitutes negligence.

## COMMENT

This instruction and comment were originally published in 1971. The comment was updated in 1995, 1998, 1999, and 2006. The instruction was revised in 2006.

Ryan v. Zweck-Wollenberg Co., 266 Wis. 630, 64 N.W.2d 226 (1954); Marsh Wood Products Co. v. Babcock & Wilcox Co., 207 Wis. 209, 240 N.W. 392 (1932); Flies v. Fox Bros. Buick Co., 196 Wis. 196, 218 N.W. 855 (1928); Restatement, Second, Torts § 395 (1965); 3 A.L.R. (3d) 1016, 1024-28 (1965) (testing, inspecting, and the failure of the manufacturer to do so in regard to defects).

Wisconsin has abolished privity as a test of liability in tort actions for negligence. The question of liability should be approached from the standpoint of the standard of care of the manufacturer or supplier and, thus, any necessity of determining whether a particular product is inherently dangerous is eliminated. Smith v. Atco Co., 6 Wis.2d 371, 94 N.W.2d 697 (1959).

The use of "unsafe" in the instruction is based on Smith v. Atco Co., supra.

As to the putting out of a product by a vendor, where it is made by another, and vendor's liability, see Wojciuk v. United States Rubber Co., 19 Wis.2d 224, 231, 120 N.W.2d 47 (1963); Restatement, supra § 400.

©2007, Regents, Univ. of Wis.

**Product Use or Misuse**. A manufacturer may be required to reasonably anticipate other uses than the one for which the chattel is primarily intended. Restatement, supra § 395, Comment m.

In Morden v. Continental AG, 2000 WI 51, 235 Wis.2d 325, 611 N.W.2d 659, the supreme court upheld a verdict which found Continental AG negligent in the design and manufacture of the tires on Plaintiff's VW van. Plaintiff's expert opined at trial that both rear tires blew out simultaneously after passing over a bump or dip on a highway overpass in Florida. After losing control of the van, it swerved, slid, bounced and rolled over into the grassy median area rendering Plaintiff a quadriplegic.

The first sentence of WCJI 3240 provides: "It is the duty of a manufacturer to exercise ordinary care in the design, construction, and manufacture of its product so as to render such product safe for its intended use."

In discussing the duty of care of a manufacturer, the Morden Court at ¶ 47, p. 356 states:

....Moreover, the test of foreseeability expects manufacturers to "anticipate the environment which is normal for the use of his product." Tanner, 228 Wis.2d at 367 (quoting Kozlowski v. John E. Smith's Sons Co., 87 Wis.2d 882, 896, 275 N.W.2d 915 (1979)). **Consequently, the duty of care requires manufacturers to foresee all reasonable uses and misuses and the consequent foreseeable dangers**, id. at 368 (citing Schuh, 63 Wis.2d at 742-43), **and to act accordingly.** (Emphasis supplied).

The supreme court in Schuh did not at pp. 742-43 make the statement attributed to it by the Morden Court. The Schuh Court stated at 742-43 as follows:

Although the plaintiff testified he thought the machine was off, he still was "misusing" the machine by standing on the edge of the hopper and using it as a perch. Therefore, it becomes necessary for the jury to determine whether the defendant could reasonably foresee such misuse of its product. ". . . [T]he manufacturer is not liable for injuries resulting from abnormal or unintended use of his product, if such use was not reasonably foreseeable. The issue is one of foreseeability, and misuse may be foreseeable." (Emphasis in original.) Authorities cited.

The language attributed to the Schuh Court comes from Tanner v. Shoupe, 228 Wis.2d 357, 368 where the Court of Appeals stated as follows:

. . . In other words, the manufacturer has the duty to foresee all reasonable uses and misuses and the resulting foreseeable dangers. Schuh, 63 Wis.2d at 742-43 . . . .

One who undertakes to rebuild or repair a chattel has the same duty as a manufacturer. 1 Frumer and Friedman, Products Liability § 5.03(3), (1966); Restatement, supra § 404.

The manufacturer of a final product has a duty to make all reasonable tests and inspections of the various component parts of the final product, even though some or all of the component parts are manufactured by another. Marsh Wood Products Co. v. Babcock & Wilcox Co., 207 Wis. 209, 240 N.W. 392 (1932); Cedarburg Light & Water Comm'n v. Allis-Chalmers, 33 Wis.2d 560, 148 N.W.2d 13 (1967); 78 A.L.R.2d 481 (1961); 3 A.L.R.3d 1016 (1965).

©2007, Regents, Univ. of Wis.

**Liability of a Machine Reconditioner**. A reconditioner does not have a duty to bring the machines it reconditions into compliance with applicable safety standards in effect when it reconditions the machines so long as it does not hold itself as bringing machines into compliance with safety standards and is not requested to do so by the machines owner. <u>Rolph v. EBI Cos</u>., 159 Wis.2d 518, 464 N.W.2d 667 (1991).

**Tailoring This Instruction to the Facts of the Case.** In <u>Anderson v. Alfa-Laval Agri, Inc.</u>, 209 Wis.2d 337, 564 N.W.2d 788 (Ct. App. 1997) the court of appeals encouraged trial courts to customize the patterned instructions based on the specific facts of the case to better assist the jury in understanding the nature of the law and how the law is to be applied to those specific facts.

In this case, a series of tailored jury instructions were requested involving the defendant's duty to incorporate foreseeable safety features into its product and the defendant's duty to all foreseeable persons who would have contact with the product, including bystanders and not just the purchaser or consumer of the product. Customized jury instructions were also sought in regard to the defendant's post-sales and nondelegable duties. The trial court, however, denied these requested instructions and gave patterned jury instructions. While recommending that specifically tailored jury instructions be used in the appropriate case, the court of appeals concluded that the trial court adequately instructed the jury even though it should have better assisted the jury with instructions specifically tailored to the factual issues raised in this case.

**Negligent Design**. In <u>Sharp v. Case Corp</u>., 227 Wis. 2d 1, 595 N.W.2d 380 (1999), the court was asked to overrule <u>Greiten v. LaDow</u>, 70 Wis.2d 589, 235 N.W.2d 677 (1975). The <u>Greiten</u> court held that a jury finding that a product is not unreasonably dangerous does not preclude a jury finding of negligent design. The court in <u>Sharp</u> declined to overrule <u>Greiten</u>. It further concluded that the jury finding that the product was not unreasonably dangerous was consistent with the jury finding that after manufacture and sale of the product, the manufacturer learned of a defect posing a serious hazard which originated and was unforeseeable at the time of manufacture, yet it failed to warn customers of the danger.

**Effect of the Adoption of Restatement, Third, of Torts**. In <u>Sharp v. Case Corp</u>., <u>supra</u>, the court acknowledged that Restatement, Third, of Torts was published in 1998 and may offer new insights into products liability law, but it declined "at this time" to overrule <u>Greiten</u>.

©2007, Regents, Univ. of Wis.

## 3254   DUTY OF BUYER OR CONSUMER: CONTRIBUTORY NEGLIGENCE

The buyer (consumer) has a duty to use ordinary care for his or her own safety and protection and to observe all defects and dangerous conditions, if any, which are open and obvious to him or her if he or she is using reasonable care and caution for his or her own safety and protection. The danger, however, must not only be obvious, but also must be understood by the buyer (consumer). The failure to use a product in accordance with its instructions, if you find they were adequate, or the use of the product in an abnormal manner is negligence.

A person is not required to see every defect or dangerous condition or even to remember the existence of every defect or dangerous condition of which he or she had knowledge. He or she is only required to act as a reasonably prudent person under the same or similar circumstances would act.

A person is not required to anticipate negligent acts or omissions on the part of others and is not negligent in failing to look out for danger when there is no reason to suspect danger.

**COMMENT**

This instruction and comment were originally published in their present form in 1971. The instruction was revised in 2015 to simplify the language and to replace the term, "guilty of negligence." Editorial changes were made in 1994 to address gender references.

Yaun v. Allis-Chalmers Mfg. Co., 253 Wis. 558, 34 N.W.2d 853 (1948).

38 Am. Jur. Negligence §§ 181, 182, 184-88, 192 (1941).

Coakley v. Prentiss-Wabers Stove Co., 182 Wis. 94, 104-07, 195 N.W. 388 (1923).

©2015, Regents, Univ. of Wis.

## 3710   CONSEQUENTIAL DAMAGES FOR BREACH OF CONTRACT

The law provides that a person who has been damaged by a breach of contract shall be fairly and reasonably compensated for his or her loss. In determining the damages, if any, you will allow an amount that will reasonably compensate the injured person for all losses that are the natural and probable results of the breach.

**COMMENT**

This instruction and comment were approved in 1980. The comment was updated in 2018.

Repinski v. Clintonville Sav. & Loan Ass'n, 49 Wis.2d 52, 181 N.W.2d 351 (1970), states, "An award of damages for breach of contract should compensate the injured party for losses necessarily flowing from the breach." The losses must be the natural and probable results of the breach. Thurner Heat Treating Corp. v. Menco, Inc., 252 Wis. 16, 30 N.W.2d 228 (1947).

"Those naturally arising damages, referred to as 'consequential damages,' include 'all losses that are natural and probable results of the breach.' " Wosinski v. Advance Cast Stone Co., 2017 WI App 51, 377 Wis.2d 596, 901 N.W.2d 797.

"The fundamental basis for an award of damages for breach of contract is just compensation for losses necessarily flowing from the breach." Dehnart v. Waukesha Brewing Co., 21 Wis.2d 583, 124 N.W.2d 664 (1963).

Loss of profits could be included as a loss. Pressure Cast Products Corp. v. Page, 261 Wis. 197, 51 N.W.2d 808 (1952).

©2018, Regents, Univ. of Wis.