IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

CEME-TUBE LLC,
    Plaintiff,

v.

CHROMA COLOR CORPORATION,
    Defendant & Third-Party Plaintiff,

v.

THE CHARTER OAK FIRE INSURANCE COMPANY and
STATE AUTOMOBILE MUTUAL INSURANCE COMPANY,
    Third-Party Defendants & Cross-Claimants, and

SELECTIVE INSURANCE COMPANY OF SOUTH CAROLINA,
    Cross-Claimant.

OPINION AND ORDER

22-cv-703-wmc

---

State Automobile Mutual Insurance Company ("State Auto"), The Charter Oak Fire Insurance Company ("Charter Oak"), and Selective Insurance Company of South Carolina ("Selective"), with State Auto and Charter Oak being named third-party defendants by Chroma Color Corporation, assert at summary judgment that their respective policies do not provide coverage for Ceme-Tube LLC's claims against Chroma Color. As an initial matter, Chroma Color's third-party crossclaim against State Auto and Charter Oak for breach of their duty to indemnify is now moot given the court's ruling that Chroma Color is not liable to Ceme-Tube. (Dkt. #329.) Further, Chroma Color has forfeited its bad faith claim by failing to respond substantively to State Auto's and Charter Oak's arguments at summary judgment. Finally, the court will otherwise deny the insurers'

motions for summary judgment having found their policies required them to defend Chroma Color.[1]

BACKGROUND[2]

Ceme-Tube LLC is solely owned and operated by James Bradac, a Wisconsin resident. Defendant and third-party plaintiff Chroma Color is a North Carolina corporation that makes colorants with its principal place of business in Illinois. The dispute between the principal parties was resolved by the court at summary judgment in defendant's favor. What remains are various coverage disputes between defendant and the insurers, as well as among themselves.

Third-party defendants and cross-claimants State Auto and Charter Oak Fire Insurance Company are an Ohio insurer with its principal place of business in that state and a Connecticut corporation with its principal place of business in that state, respectively. Finally, cross-claimant Selective Insurance Company of South Carolina is an Indiana corporation with its principal place of business in that state.

Each of the defendant insurance companies issued a series of business insurance policies to Chroma Color: (1) State Auto from February 2007 to February 2015 (dkt. #70-1 to #70-9); (2) Selective from February 2015 to February 2019, (dkt. ##122-131);[3] and

---

[1] In particular, this finding obviously results in judgment against State Auto with regard to its claim for reimbursement of the costs incurred in defending Chroma Color.

[2] The court provided a full statement of facts in its merits summary judgment opinion and order. (Dkt. #329, at 2-9.) Thus, the background provided here is for context, while additional facts are provided in the analysis below as necessary.

[3] Selective notes that two entities issued policies to Chroma Color at the relevant times -- "Selective Insurance Company of America" and "Selective Insurance Company of South Carolina" -- explaining it collectively refers to these entities as "Selective Insurance Company."

(3) the Charter Oak from July 1, 2018, through 2022 (dkt. #141-2 to 9.)[4] Each policy contained a commercial general liability coverage form with similar language, explaining that the insurer was only liable for "property damage" caused by an "occurrence." (State Auto Policy (dkt. #70-9) 149; Charter Oak Policy (dkt. #141-2) 126; Selective Policy (dkt. #131) 211.) State Auto and Selective add that they also issued Chroma Color "umbrella" policies with similar policy terms.

Chroma Color asserted third-party claims for declaratory judgment, breach of contract, and "insurance bad faith" against State Auto and Charter Oak. (Dkt. #174, at 13-21.) In turn, State Auto and Charter Oak asserted third-party crossclaims against Chroma Color, seeking a declaratory judgment that their policies did not provide coverage for Ceme-Tube's claims, and even if the policies did provide coverage, certain of the policies' express exclusions precluded coverage. (Dkt. #32, at 13-14 and Dkt. #152, at 32-33.) Finally, State Auto and Charter Oak assert that any arguable coverage, defense and indemnity obligations should be shared with other insurers, presumably including cross-claimant Selective, who also issued a policy to Chroma Color. (Dkt. #32, at 14 and Dkt. #152, at 33-36.)

OPINION

State Auto and Charter Oak move for summary judgment on their respective requests for declaratory relief, while Selective, who did not move separately for declaratory relief, seeks a declaration that it owes Chroma Color no further duty to defend or

---

[4] Charter Oak and Chroma Color dispute the exact dates of coverage, but the dispute does not appear relevant to Charter Oak's motion for summary judgment.

indemnify it in its motion for summary judgment. Summary judgment is appropriate when there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Frazier-Hill v. Chi. Transit Auth.*, 75 F.4th 797, 801 (7th Cir. 2023). A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The parties generally agree that Wisconsin substantive law applies to the court's analysis of the relevant policy provisions. (Dkt. ##134, at 11; 140; 145; 159, at 4 n.2.) *See RLI Insurance Company v. Conseco, Inc.*, 543 F.3d 384, 390 (7th Cir. 2008) ("When neither party raises a conflict of law issue in a diversity case, the applicable law is that of the state in which the federal court sits.") However, State Auto and Chroma Color appear to dispute whether Wisconsin or Illinois law applies to Chroma Color's bad faith claim. (*Compare* dkt. #134, at 21 ("It is not certain that Chroma Color may raise a bad faith claim [under Illinois law] at all.") *with* dkt. #159, at 4 n.2 (Chroma Color asserting that Wisconsin law would apply to its bad faith claim).) The court need not resolve this dispute, however, as Chroma Color forfeited that claim.

## I. Chroma Color's Breach of Duty to Indemnify, Breach of Duty to Defend, and Bad Faith Claims

First, because Chroma Color has no liability to Ceme-Tube, any question of whether the insurers had a duty to indemnify Chroma Color is moot. *See Rydland v. Marina Cliffs Ass'n*, 2017 WI App 30, ¶ 30, 375 Wis. 2d 325, 897 N.W.2d 67 (unpublished) (affirmance of no liability finding would render the question of whether insurer had a duty to indemnify moot); *Choinsky v. Germantown Sch. Dist. Bd. of Educ.*, 2019 WI App 12, ¶ 19, 386 Wis. 2d

4

285, 926 N.W.2d 196 (verdict for defendant on the merits resulted in no indemnity issue). Second, to the extent that Chroma Color asserts that State Auto breached its duty to defend by delaying its appointment of defense counsel, Chroma Color suffered no damages from any breach, as it is undisputed that it was never left without defense counsel *or* otherwise required to incur costs for its defense in the time between Chroma Color's February 2023 tender of coverage and State Auto's July 2023 appointment of separate defense counsel. (State Auto Reply in Support of Prop. Findings of Fact (dkt. #208) ¶ 42.) Third, Chroma Color has forfeited its bad faith claims against State Auto and Charter Oak by not responding to the substance of those insurers' arguments on those claims at summary judgment. *Nichols v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, 509 F. Supp. 2d 752, 760-61 (W.D. Wis. 2007) (plaintiff forfeited bad faith claim by not responding to the substance of defendant's argument at summary judgment). In any event, as explained in the next section, whether the insurers owed Chroma Color coverage was "fairly debatable," so there was no bad faith. *Brethorst v. Allstate Prop. & Cas. Ins. Co.*, 2011 WI 41, ¶ 26, 334 Wis. 2d 23, 798 N.W.2d 467 (a claim that is "fairly debatable" cannot be the subject of a bad faith claim as in such a case the insurer is "entitled to debate it").

## II. Coverage Issues

Even though the court has granted summary judgment to Chroma Color in the underlying suit, the duty to defend is based on the nature of Ceme-Tube's claims, not their merits. *Fireman's Fund Ins. Co. of Wis. v. Bradley Corp.*, 2003 WI 33, ¶ 21, 261 Wis. 2d 4, 660 N.W.2d 666. Chroma Color asserts that the court can only consider the complaint and relevant insurance policies in deciding the insurers' motions, but because all three

insurers have apparently taken up the tendered defense, albeit under reservations of rights, the court looks beyond the four corners of the complaint and considers whether they are entitled to summary judgment on an issue of coverage based on the full record. *Saft Am., Inc. v. Precision Drawn Metals, Inc.*, No. 21-CV-35-JDP, 2022 WL 3444883, at *5 (W.D. Wis. Aug. 17, 2022) (when the insurer is providing a defense under a reservation of rights, "the court may consider both the allegations in the complaint and subsequently developed evidence in determining the scope of the insurer's duties").[5]

As with other contracts governed by Wisconsin law, insurance policies are interpreted to effectuate the contracting parties' intent. *Water Well Sols. Serv. Grp., Inc. v. Consolidated Ins. Co.*, 2016 WI 54, ¶ 14, 369 Wis. 2d 607, 881 N.W.2d 285. The court interprets an insurance policy's terms "as a reasonable person in the position of the *insured* would understand such language." *Id.* (quotation marks omitted). Further, courts construe any ambiguity in policy language in favor of coverage. *Progressive N. Ins. Co. v. Olson*, 2011 WI App 16, ¶ 7, 331 Wis. 2d 83, 793 N.W.2d 924.

Wisconsin courts first determine whether the policy makes an initial grant of coverage and then examine whether any policy exclusions preclude coverage, and if any exclusion applies, courts look to see whether an exception to that exclusion reinstates coverage. *Riverback Farms, LLC v. Saukville Feed Supplies, Inc.*, 2023 WI App 40, ¶ 10, 409 Wis. 2d 14, 995 N.W.2d 257, review denied, 2024 WI 5, ¶ 10, 6 N.W.3d 684.

---

[5] Of course, these coverage disputes may yet be rendered moot should plaintiff Ceme-Tube decide not to appeal this court's merits decision, but at least at this point, since further costs of defense on appeal or remand are possible, the related coverage issues are still ripe.

Each insurer seeks summary judgment on the grounds that Ceme-Tube does not claim "property damage" caused by an "occurrence." Finally, although any distinction is a fine one, at best, Charter Oak also argues no causal nexus exists between Ceme-Tube's alleged occurrence and its property damage. Charter Oak and Selective assert that certain exclusions bar coverage even if their policies would otherwise apply. Because each insurer similarly defines key terms, the court will address these arguments collectively.[6]

A. Initial Grant of Coverage

To begin, State Auto, Charter Oak and Selective similarly defined "occurrence" and "property damage" as follows.

| Insurer | Term | Definition |
| --- | --- | --- |
| State Auto | "Occurrence" | "An accident, including continuous or repeated exposure to substantially the same harmful conditions." (State Auto Insurance Policy (dkt. #70-9) 160.) |
| Charter Oak **and** Selective | "Occurrence" | "An accident, including continuous or repeated exposure to substantially the same general harmful conditions." (Charter Oak Insurance Policy (dkt. #141-2) 144; Selective Policy (dkt. #131) 225.) |
| State Auto, Selective, **and** Charter Oak | "Property Damage" | "Physical injury to tangible property, including all resulting loss of use of that property"; *or* "Loss of use of tangible property that is not physically injured." (State Auto Policy (dkt. #70-9) 160; Selective Policy (dkt. #131) 211; Charter Oak Policy (dkt. #141-2) 145.) |

---

[6] Unlike the other insurers, Selective did not seek declaratory judgment that its policies did not cover Ceme-Tube's claims. Arguably, absent a claim for declaratory judgment, the court cannot grant Selective summary judgment. *See* Fed. R. Civ. P. 56(a) ("A party may move for summary judgment, *identifying each claim or defense* . . . on which summary judgment is sought." (emphasis added)). However, regardless of this procedural issue, the court will deny Selective's motion for summary judgment.

7

While none of the policies go on to define "accident," Wisconsin courts have consistently defined an "accident" as "an event or condition occurring by chance or arising from unknown or remote causes," or "an event which takes place without one's foresight or expectation." *Am. Fam. Mut. Ins. Co. v. Am. Girl, Inc.*, 2004 WI 2, ¶ 37, 268 Wis. 2d 16, 673 N.W.2d 65.

Here, construing these policies as an insured like Chroma Color would understand them, a reasonable jury could find Ceme-Tube's claimed "property damage" was caused by an "occurrence." *First*, a reasonable jury could find that there was an occurrence based on Ceme-Tube's allegations. Faulty workmanship alone is not an "occurrence," *but* "faulty workmanship may cause an 'occurrence.'" *5 Walworth, LLC v. Engerman Contracting, Inc.*, 2023 WI 51, ¶ 35, 408 Wis. 2d 39, 992 N.W.2d 31. For example, the Wisconsin Supreme Court concluded in *American Girl* that soil settling due to faulty advice from a soil engineering subcontractor was an occurrence that caused property damage (specifically, a warehouse to sink, buckle and crack). *Am. Girl*, 268 Wis. 2d 16, ¶ 5. Next, in *Kalchthaler v. Keller Const. Co.*, 224 Wis. 2d 387, 591 N.W.2d 169 (Ct. App. 1999), the Wisconsin Court of Appeals concluded that a subcontractor's faulty workmanship resulted in leaking windows (an accident and occurrence) that resulted in property damage. *Id.* at 397. Likewise, in *Acuity v. Soc'y Ins.*, 2012 WI App 13, 339 Wis. 2d 217, 810 N.W.2d 812, the court held that faulty excavation caused soil erosion (an accident and occurrence) which resulted in property damage (there, a building's collapse). *Id.* ¶ 17. Finally, most recently, in *5 Walworth*, the Wisconsin Supreme Court concluded that poor installation of shotcrete (faulty workmanship) caused a pool to crack and leak which damaged the surrounding soil (accident, occurrence and property damage). 2023 WI 51, ¶ 36.

8

In this case, the alleged faulty workmanship was Chroma Color's adding insufficient UV protectant to its colorant, then sold to Ceme-Tube or its designated third-party molder. Although Chroma Color providing insufficient UV protectant to Ceme-Tube was not itself an occurrence, it allegedly caused one as in *American Girl*, *Kalchthaler* and *5 Walworth*. Specifically, the tubes, which allegedly lacked adequate UV protection, suffered repeated exposure to harmful UV rays that resulted in an accident (here, unexpected premature degradation of the tubes). (Sec. Am. Compl. (dkt. #117) ¶¶ 18-19); *see Decker Plastics Inc. v. W. Bend Mut. Ins. Co.*, 833 F.3d 986, 987-88 (8th Cir. 2016) (concluding, under Iowa law, that unexpected deterioration of bags that did not contain UV inhibitor was an occurrence).

State Auto and Charter Oak fairly point out that the tubes were *expected* to degrade when exposed to UV light, and even the best UV protectant could not indefinitely prevent tube degradation. (Bradac Dep. (dkt. #107) 58); *see Am. Girl*, 268 Wis. 2d 16, ¶ 5 (concluding that there was a occurrence where "[n]either the cause nor the harm was intended, anticipated, or expected"). Further, State Auto asserts that Chroma Color's colorant did not damage Ceme-Tube's product at all, but only delayed or slowed damage to the tubes. However, Ceme-Tube alleged that the tubes were expected to only *slowly* begin to degrade after ten years in the field, not *unexpectedly* begin to degrade from exposure within a few years. (Sec. Am. Compl. (dkt. #117) ¶ 11.)

Moreover, while State Auto argues that Ceme-Tube intentionally incorporated Chroma Color's colorant into its tubes and Selective asserts that Chroma Color misrepresented the level of UV protection it would provide, those arguments focus on the wrong events. *See McLaughlin v. Gaslight Pointe Condo. Ass'n, LTD*, ¶ 30, 412 Wis. 2d 140,

9

8 N.W.3d 115 ("The focus is on whether the injury or damages was foreseeable or expected, not on whether the action that caused the damages was intended." (quotation marks omitted)).

*Second*, a reasonable jury could conclude that Ceme-Tube's complaint and evidence alleged "property damage." To start, Ceme-Tube alleges that: (a) it received "significant complaints regarding the degradation of its products"; and (b) it may need to repair and replace many tubes that it sold, which at least implies the tubes suffered property damage. (Sec. Am. Compl. (dkt. #117) ¶¶ 15, 19.)  Next, although neither party relies on this evidence, Ceme-Tube's expert, Robert Pieper, wrote that there was "mud cracking" on the tubes caused by UV exposure. (Pieper Rep. (dkt. #112-3) 7.)[7]  State Auto also asserts that Ceme-Tube's incorporating Chroma Color's allegedly faulty colorant only *reduced* the tube's anticipated value without causing "property damage," but that argument is unpersuasive because, as discussed above, Ceme-Tube asserts that the tubes themselves degraded.

*Third*, while Charter Oak argues that there was no causal nexus between the "occurrence" and "property damage," a reasonable jury could infer a causal nexus between the alleged insufficient UV protectant and tube degradation.  Charter Oak further argues that the doctrine of fortuity makes its policies inapplicable, because it was inevitable that UV light exposure would cause the colorant and tubes to deteriorate.  However, as discussed above, Ceme-Tube alleges that the tubes unexpectedly degraded *prematurely*. *See Glassner v. Detroit Fire & Marine Ins. Co.*, 23 Wis.2d 532, 127 N.W.2d 761, 764

---

[7] Although this evidence may not have been admissible in the merits action, it is further evidence that Ceme-Tube claimed damage to its tubes from Chroma Color allegedly providing it with insufficient UV protectant.

(1964) ("An 'all-risk' policy is a promise to pay for loss caused by a fortuitous and extraneous happening, but it is not a promise to pay for loss or damage which is almost certain to happen because of the nature and inherent qualities of the property.")

### B. Policy Exclusions

Alternatively, Charter Oak asserts that, even if there was coverage, the following exclusions apply: (1) "your product"; (2) "your work"; (3) "impaired property"; and (4) "expected or intended." Selective also asserts that the "your product" exclusion applies.[8] A court interpreting an insurance policy exclusion presumes that a reasonable insured understands that the exclusion limits coverage; however, if the exclusion is ambiguous, "it will be construed in favor of coverage." *Phillips v. Parmelee*, 2013 WI 105, ¶ 15, 351 Wis. 2d 758, 840 N.W.2d 713 (citations omitted).

As defined in the respective policies, the relevant definitions for these terms are as follows:

| Insurer | Term | Definition |
| --- | --- | --- |
| Charter Oak **and** Selective | "your product" | "Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by," in relevant part, "you," including "[w]arranties or representations made at any time with respect to the fitness, quality, durability, performance or use of 'your product.'" (Charter Oak Policy (dkt. #141-2) 146; Selective Policy (dkt. #131) 226.) |
| Charter Oak | "your work" | "Work or operations performed by you or on your behalf" and "[m]aterials, parts, or equipment furnished in connection with such work or operations," including, "[w]arranties or representations made at any time with respect to the fitness, quality, durability, performance or use of 'your work.'" (Charter Oak Policy (dkt. #141-2) 146.) |

---

[8] State Auto does not assert that any exclusions apply at summary judgment. (Dkt. #134.)

11

| Charter Oak | "impaired property" | "'Impaired property' means tangible property, other than 'your product' or 'your work', that cannot be used or is less useful because: It incorporates 'your product' or 'your work' that is known or thought to be defective, deficient, inadequate or dangerous." (*Id.*) |

First, the "your product" exclusion does not apply when Ceme-Tube has alleged that the tubes it manufactures and sells deteriorated prematurely from UV light exposure due to a defect in Chroma Color's product used in production. Second, the "your work" exclusion does not apply for the same reason as the "your product" exclusion does not: Ceme-Tube asserts that its manufactured tubes were damaged, not as the result of Chroma Color's work or operations but by its sale of a defective product. (Sec. Am. Compl. (dkt. #117) ¶¶ 19-20.)

Third, the "impaired property" exception applies to "'[p]roperty damage' to 'impaired property' or property that has not been physically injured, arising out of: A defect, deficiency, inadequacy or dangerous condition in 'your product' or 'your work.'" (Charter Oak Insurance Policy (dkt. #141-2) 130.) The impaired property exclusion also requires that the impaired property can be restored to use by repair, replacement, adjustment or removal of "your product" or "your work" -- here, the colorant. (*Id.*) In other words, the "impaired property" exclusion "addresses situations where a defective product, af[t]er being incorporated into the property of another, must be replaced or removed at great expense, thereby causing loss of use of the property." *Tweet/Garot-Aug. Winter, LLC v. Liberty Mut. Fire Ins. Co.*, No. 06-C-800, 2007 WL 445988, at *8 (E.D. Wis. Feb. 7, 2007). Although it presents a closer question, the "impaired property" exclusion would also not apply on the facts here. In particular, while Charter Oak asserts that Chroma Color's colorant needed to be removed or reapplied, there is no indication that

12

Ceme-Tube wants to repair, replace or adjust only Chroma Color's *colorant*.  Rather, Ceme-Tube wants to replace the tubes sold to its customers after premature deterioration due to defects in the colorant.

Fourth, Charter Oak asserts that the "expected or intended injury" exclusion applies because adding Chroma Color colorant to the tubes was an intentional act, and it expected that the colorant would degrade with exposure to the elements, but the court already rejected that argument at the initial coverage stage.  *See* discussion *supra*, at 9.

### III. Reimbursement of Defense Costs

Finally, State Auto alone asserts that it is entitled to reimbursement of the money paid in defending Chroma Color against Ceme-Tube's claims.  In relevant part, State Auto's policy purports, under "Illinois Changes," to allow for the possibility of "Defense Cost Reimbursement."  Specifically, that provision explains, "Should a court determine that the insurance does not apply and that we therefore had no duty to defend such claim or 'suit,' we may: Be entitled to reimbursement from the insured after the insured is notified in writing, of all amounts paid by us for the defense provided in the underlying 'suit' which we had no contractual duty to provide (other than by the terms of this endorsement)."  (State Auto Policy (dkt. #70-9) 140.)  Of course, State Auto's claim for reimbursement now fails because, as explained above, the court has concluded that there *is* coverage under State Auto's policy.[9]

---

[9] Even if it were not so, it is unsettled under Wisconsin law whether an insurer can seek reimbursement for sunk defense costs provided under a reservation of rights as to policy coverage. *Hanover Ins. Co. v. BMOC, Inc.*, No. 18-CV-325-WMC, 2019 WL 949215, at *6 (W.D. Wis. Feb. 27, 2019).

13

ORDER

1) State Auto's and Charter Oak's motions for summary judgment (dkt. ##133, 139) are GRANTED in part as to Chroma Color's claims for breach of duty to defend, breach of duty to indemnify, and bad faith and are DENIED in part as to declaratory judgment.

2) Selective's motion for summary judgment (dkt. #143) is DENIED.

Entered this 30th day of July, 2024.

> BY THE COURT:
>
> /s/
>
> WILLIAM M. CONLEY
> District Judge